UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

ANNETTE S.,[1]

      **Plaintiff,**

v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 1:21-cv-2153
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Annette S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

I. **PROCEDURAL HISTORY**

On October 15, 2015, Plaintiff filed applications for disability insurance benefits and supplemental security income, alleging that she has been disabled since August 22, 2014. R. 104–05, 128–29, 297–308. The applications were denied initially and upon reconsideration. R. 156–62,167–72. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 173–74. Administrative Law Judge ("ALJ") Nancy Lisewski held a hearing on May 16, 2018, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 61–81. In a decision dated September 5, 2018, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 22, 2014, Plaintiff's alleged disability onset date, through the date of that decision ("the ALJ's first decision"). R. 130–46. In an order dated November 8, 2019, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's first decision, and remanded to the ALJ for resolution of the following issues:

- The Appeals Council received additional evidence. This additional evidence is new, material, and relates to the period at issue. There is a reasonable probability that the additional evidence would change the outcome of the decision. The claimant showed good cause for why the evidence was not submitted earlier. In a letter dated November 23, 2018, the claimant's representative stated the 10 exhibits submitted to the Appeals Council were not available prior to the issuance of the hearing decision (some of the records were requested prior to the hearing but were not received until after the hearing). These records show diagnoses of fibromyalgia and posttraumatic stress disorder. Included in these records is a treating source statement, wherein Dr. Nordone indicates the claimant's fibromyalgia is disabling for the period "prior to and as of May 16, 2018." Additionally, records from Center for Family Services indicate the claimant was diagnosed with major depressive disorder, recurrent, and posttraumatic stress disorder on July 28, 2015 and in June 2018 was referred to a partial care program and prescribed cymbalta. Records from Woodbury Behavioral Health show the claimant was admitted for treatment of her mental impairments on July 18, 2018. The additional evidence should be considered by the Administrative Law Judge on remand.

- The Administrative Law Judge gave "great weight" to the state agency medical consultants' opinions "because there is no evidence to support severe impairments in the record" (Decision page 8, paragraph 5). However, the state agency medical consultants found severe mental impairments of anxiety disorder and affective

disorder and that the claimant had moderate difficulties in maintaining, concentration, persistence or pace, which could limit the claimant to performing unskilled work (Exhibits 1A, page 7; 2A, page 7; 5A, page 6; and 6A, page 6). The Administrative Law Judge referenced the updated B criteria ratings, but did not provide sufficient rationale for not adopting the state agency's limitations (Decision, page 9). Further evaluation of these opinions and the nature and severity of the claimant's mental impairments is necessary.

Upon remand the Administrative Law Judge will:

- Obtain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512 and 416.912). The additional evidence may include, if warranted and available, a consultative examination with psychological testing and medical source opinions about what the claimant can still do despite the impairments.

- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).

- Give further consideration to the treating and nontreating source opinions pursuant to the provisions of (20 CFR 404.1527 and 416.927) and nonexamining source opinion pursuant to the provisions of (20 CFR 404.1527 and 416.927), and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating and nontreating sources to provide additional evidence and/or further clarification of the opinions and medical source statements about what the claimant can still do despite the impairments (20 CFR 404.1520b and 416.920b). The Administrative Law Judge may enlist the aid and cooperation of the claimant's representative in developing evidence from the claimant's treating sources.

- If warranted by the expanded record, obtain evidence from a vocational expert to determine whether the claimant has acquired any skills that are transferable to other occupations under the guidelines in Social Security Ruling 82-41. The hypothetical questions should reflect the specific capacity/limitations established by the records as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of such appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

R. 149–50. The Appeals Council went on to direct that "the Administrative Law Judge will offer the claimant an opportunity for a hearing, address the evidence which was submitted with the request for review, take any further action needed to complete the administrative record and issue a new decision." R. 151.

Following remand from the Appeals Council, the ALJ held a second hearing on May 19, 2020, at which Plaintiff, who was again represented by counsel, testified, as did a vocational expert. R. 43–60. In a decision dated June 29, 2020, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 22, 2014, Plaintiff's alleged disability onset date, through the date of that decision ("the ALJ's second decision"). R. 15–33. That decision became the final decision of the Acting Commissioner of Social Security when the Appeals Council declined review on December 11, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 7, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 8.[3] On June 8, 2021, the case was reassigned to the undersigned. ECF No. 9. The matter is ripe for disposition.

## II. LEGAL STANDARD

### A. Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

4

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g) & 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

5

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

7

## B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.   ALJ'S SECOND DECISION AND APPELLATE ISSUES

Plaintiff was 54 years old on her alleged disability onset date. R. 31. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between August 22, 2014, her alleged disability onset date, and the date of the ALJ's second decision. R. 18.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: personality disorder, depression, anxiety, and post-traumatic stress disorder. *Id*. The ALJ also found that Plaintiff's diagnosed fibromyalgia, status post-cholecystectomy, and diverticulitis were not severe impairments. R. 18–19.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 19–21.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain non-exertional limitations. R. 21–31. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a occupational therapy assistant. R. 31.

At step five and relying on the testimony of the vocational expert, the ALJ found that a

significant number of jobs—*e.g.,* approximately 51,000 jobs as a linen-room attendant; approximately 152,000 jobs as a day worker; approximately 33,700 jobs as a laundry worker I— existed in the national economy and could be performed by Plaintiff. R. 32. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from August 22, 2014, her alleged disability onset date, through the date of that decision. *Id*.

Plaintiff disagrees with the ALJ's findings at steps two, four, and five and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 13; *Plaintiff's Reply Brief*, ECF No. 15. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 14.

### IV.    RELEVANT EVIDENCE AND DISCUSSION

Plaintiff raises several different challenges to the ALJ's decision, including, *inter alia*, that the ALJ erred when crafting the RFC determination. *Plaintiff's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, pp. 15–17; *Plaintiff's Reply Brief*, ECF No. 15, p. 5. Citing the opinions of Brenda J. Camacho, M.D., Plaintiff's treating physician, and Nancy Scweitzer, APN, Plaintiff's treating behavioral health advanced practice nurse, Plaintiff specifically argues that the ALJ erred in failing to address in the RFC all of her mental limitations, including a moderate limitation on her ability to, *inter alia*, complete a normal workday and workweek. *See id*. For the reasons that follow, the Court agrees that the RFC does not address all of Plaintiff's mental limitations, but bases this conclusion on the opinions of the reviewing state agency psychological

consultant, Todd Giardina, Ph.D. *Cf. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 601097, at *2-3 (E.D. Pa. Feb. 16, 2021), *reconsideration denied sub nom. Jennings o/b/o Thomas v. Saul*, No. CV 20-1953, 2021 WL 1175134 (E.D. Pa. Mar. 29, 2021) ("This unexplained mistake is a clear, reversible error that this court has addressed *sua sponte*.") (citations omitted); *McNeal v. Comm'r of Soc. Sec.*, No. CIV.A. 10-318-J, 2012 WL 1038898, at *3 (W.D. Pa. Mar. 28, 2012) ("The Court does not reach any of the issues raised by Plaintiff but finds that remand is warranted on grounds not raised by the parties.").

A claimant's RFC is the most that the claimant can do despite her limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). At the administrative hearing stage, the ALJ is charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In making these findings, the ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its

11

statutory function of judicial review." *Cotter*, 642 F.2d at 704−05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id.* at 705−06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citing *Cotter*, 642 F.2d at 705). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209−10 (3d Cir. 2019) ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Cotter*, 642 F.2d at 706−07 ("Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In addition, the Court notes that state agency consultants are experts in Social Security disability programs. SSR 96-6p. "An ALJ may not ignore these opinions and must explain the

weight given to them." *Neal v. Comm'r of Soc. Sec.*, 57 F. App'x 976, 979 (3d Cir. 2003). An ALJ may rely on a state agency consultant's findings and conclusions even where there is a lapse of time between the state agency report and the ALJ's decision and where additional medical evidence is later submitted. *Chandler,* 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it. Only where 'additional medical evidence is received that *in the opinion of the [ALJ]* . . . may change the State agency medical . . . consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing,' is an update to the report required.") (emphasis in original) (citations omitted); *Wilson v. Astrue*, 331 F. App'x 917, 919 (3d Cir. 2009) ("Generally, an ALJ is required to consider the reports of State agency medical consultants; however, there is no requirement that an ALJ must always receive an updated report from the State medical experts whenever new medical evidence is available.").

In the case presently before the Court, the ALJ determined at step four of the sequential evaluation that Plaintiff had the RFC to perform "a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to work that is simple, routine, and unskilled." R. 21. In making this finding, the ALJ considered the opinions of, *inter alios*, the reviewing state agency psychological consultant Todd Giardina, Ph.D. R. 29. Dr. Giardina conducted an initial review[4] of Plaintiff's medical record on behalf of the state agency on January 26, 2016, R. 87–92, 98–102, and found that Plaintiff suffered from affective disorders and anxiety-related disorders. R. 87, 98. In considering the paragraph B criteria of Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders), Dr. Giardina opined that Plaintiff had a moderate difficulty in maintaining concentration, persistence or pace; mild restrictions of

---

[4] No psychological consultant reviewed the record upon reconsideration for the state agency.

13

activities of daily living and maintaining social functioning; and no repeated episodes of decompensation. R. 87–88, 99. Plaintiff had moderate limitations in her abilities to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. R. 90, 101. Plaintiff could sustain concentration, persistence, or pace "for varied types of work/tasks in 2 hour segments in a non-quota-driven role[.]" *Id*. Dr. Giardina further opined that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting. *Id*. Under the heading "MRFC – Additional Explanation[,]" Dr. Giardina opined that Plaintiff was "[c]apable of occupational functioning within limits defined above[.]" R. 90, 101–02.

> In her written decision, the ALJ considered Dr. Giardina's opinions as follows:
>
> The opinions of the State agency psychological consultant at the Initial level, Todd Giardina, Ph.D., are accorded some weight to the extent the opinions were consistent with, and supported by, the clinical evidence, which showed that the claimant had mild limitations in interacting with others, and moderate limitations in concentrating, persisting, or maintaining pace (Ex. 1A; Ex. 2A). However, the consultant nonetheless did not address the claimant's mild limitations in adapting or managing oneself and in understanding, remembering, or applying information, since the consultant evaluated the claimant's allegations under the old "paragraph B" criteria, rather than the new "paragraph B" criteria (Ex. 1A at 7; Ex. 2A at 7). As such, the opinions are accorded only some weight.

R. 29.

As previously noted, Plaintiff challenges the ALJ's RFC determination, arguing, *inter alia*, that that determination failed to account for Plaintiff's moderately limited ability to complete a normal workday and that the ALJ failed to explain this omission. *Plaintiff's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 13, pp. 8–11; *Plaintiff's Reply Brief*, ECF No. 15, p. 5. This Court agrees that the RFC fails to address this limitation as well as Plaintiff's moderate

limitations in her ability to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, and respond appropriately to changes in the work setting. The ALJ specifically found that Dr. Giardina's opinions as to moderate limitations in concentrating, persisting, or maintaining pace were "consistent with, and supported by, clinical evidence[.]" R. 29. Yet it is not clear to the Court why the ALJ failed to incorporate into the RFC that doctor's opinion that Plaintiff was also moderately limited in her ability to perform activities within a schedule and complete a normal workday and workweek without interruptions from psychologically based symptoms, working within "2 hour segments in a non-quota-driven role[.]" R. 29, 90, 101. Notably, the RFC found by the ALJ does not contain any accommodation for these limitations, nor did the ALJ ever explain why she implicitly rejected these limitations. R. 21, 29. Although an ALJ is free to weigh the medical opinions in the record and to determine whether and to what extent those opinions are to be credited, an ALJ must in all events explain her reasoning in that regard. *Cotter*, 642 F.2d at 704–05; *Fargnoli,* 247 F.3d at 42; *Morales*, 225 F.3d at 317; *see also Jones,* 364 F.3d at 505 (providing that an ALJ's decision must contain "sufficient development of the record and explanation of findings to permit meaningful review"). Similarly, an ALJ may not reject evidence for no reason or the wrong reason. *Sutherland*, 785 F. App'x at 928. Where, as here, the ALJ's failure to include in Plaintiff's RFC—or to explain the omission from Plaintiff's RFC—limitations relating to moderate limitations in Plaintiff's ability to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace without an unreasonable number and length of rest periods—cannot be viewed as harmless. *See H.G. v. Comm'r of Soc. Sec.*, No. CV 20-7560, 2021 WL 3706724, at *2–3 (D.N.J. Aug. 20, 2021) (remanding where "the ALJ overlooked a key finding" by reviewing state agency physicians, namely, that the plaintiff has a moderate

limitation in the ability to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances, and that "the reviewers agreed that Plaintiff has a moderate limitation to the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms"); *Moeller v. Kijakazi*, No. 1:20-CV-00571, 2021 WL 3207247, at *8–9 (M.D. Pa. July 29, 2021) (remanding case where "it is unclear how the ALJ accounted for Dr. Murphy's opinion that Ms. Moeller is moderately limited in her 'ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods'" and finding that if the ALJ had included this limitation in the RFC, "it could have made a difference as to whether Ms. Moeller can engage in sedentary work. It also could have altered the vocational expert's analysis of the type of work Ms. Moeller can perform") (internal citations omitted); *Taylor v. Comm'r of Soc. Sec.*, 83 F. Supp. 3d 625, 627–28 (M.D. Pa. 2015) (remanding where the ALJ "seemingly adopted some of the limitations suggested by Drs. Mrykalo and Kelsey into his RFC and did not adopt others, without explanation" such as "the ALJ does not make any mention of the finding that plaintiff had moderate limitations in his ability to complete a normal workday and workweek without being interrupted by psychological symptoms and to perform at a consistent pace without an unreasonable number of rest periods" and finding that "[b]ecause there is not an account of his reasoning as to these opinions, there is no way for the court to determine whether they should have been included in the RFC and consequently affected the type of work that the ALJ determined plaintiff would be able to perform").

In addition, to the extent that the ALJ discounted Dr. Giardina's opinions because that "consultant evaluated the claimant's allegations under the old 'paragraph B' criteria, rather than

the new 'paragraph B' criteria[,]" R. 29, substantial evidence does not support the ALJ's reasoning. "Effective January 17, 2017, the Social Security Administration changed the language of § 404.1520a [and § 416.920a] from 'activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation' to 'understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.'" *Pardini v. Berryhill*, 2020 WL 1245342, at *12, n. 13 (N.D. Cal. 2020) (citations omitted). "A close examination of the new versus old paragraph B criteria indicates significant areas of overlap such that an evaluation of an individual under the old criteria would inform and assist in evaluating an individual under the new criteria." *Montgomery v. Comm'r of Soc. Sec.*, No. 3:17-CV-00617-CHL, 2019 WL 1427560, at *7 (W.D. Ky. Mar. 29, 2019); *see also Denslow v. Comm'r of Soc. Sec.*, No. 8:18-CV-2424-T-JSS, 2020 WL 634417, at *5 (M.D. Fla. Feb. 11, 2020) ("Although the evaluations by the State Agency consultants appropriately applied the criteria in effect at the time, the ALJ was required to apply the new criteria. But because of the substantial overlap, the consultants' opinions provide medical evidence relevant to the ALJ's determinations under the new criteria."); *Carbone v. Saul*, No. 18-cv-10476-RGS, 2019 WL 4454453, at *12 (D. Mass. Aug. 29, 2019) ("There are significant areas of overlap between the new and old 'paragraph B' criteria, such that an evaluation under the old criteria would inform and assist in an evaluation under the new criteria."); *cf. Gabriel C. v. Comm'r of Soc. Sec.*, No. 6:18-CV-671 (ATB), 2019 WL 4466983, at *7 (N.D.N.Y. Sept. 18, 2019) ("The SSA acknowledges, and plaintiff concedes, that there is considerable overlap between the pre- and post-modification criteria of paragraph B, and many of the considerations remain similar. Thus, the questionnaires [], coupled with the remaining evidence of record, provided substantial evidence to support the ALJ's analysis of the paragraph B criteria."). Notably, the ALJ stated

that Dr. Giardina "did not address the claimant's mild limitations in adapting or managing oneself[,]" R. 29, but overlooked the fact that Dr. Giardina expressly rated Plaintiff's "adaptation limitations[,]" opining, *inter alia*, that Plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting. R. 90, 101. Again, for the reasons previously discussed, an ALJ may not reject evidence for the wrong reason. *Sutherland*, 785 F. App'x at 928.

Accordingly, this Court concludes that remand of the matter for further consideration is appropriate even if, upon further examination, the ALJ again concludes that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision."). The Court therefore concludes that the decision of the Commissioner must be reversed and the matter must be remanded to the Commissioner for further consideration of these issues.[5]

## V.    CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

---

[5] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Giardina's opinions and the RFC determination, the Court does not consider those claims.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 28, 2022                                     *s/Norah McCann King*
                                                                        NORAH McCANN KING
                                                           UNITED STATES MAGISTRATE JUDGE